UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SUAN D. KENDRICK,

Plaintiff,

Case No. 20-cv-1884-pp

v.

MEGAN J. BRENNAN, POSTMASTER GENERAL,
ROBERT G. PRAHLE, CHARLES SPAHN,
ALBERT GUZMAN, JR., KIM ASHMUS,
PAMELA CANADA, DARLENE ABRAMS,
KATHERINE VICKERS, ALAN G. BARNEY,
STEVE J. BACIK, DIANNE M. GRABOWSKI,
LILLIAN M. NIEVES, META K. CICERO,
DANIEL KAY, GINA JUNIEL, TRENT CANADY,
KENNTH D. LIGGANS, MARVIN RIVERA,
PAMELA WALKER, LARRY BROWN, JR. and JOHN MICELI,

Defendants.

**ORDER SCREENING COMPLAINT (DKT. NO. 1), DISMISSING COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND SETTING DEADLINE FOR PLAINTIFF TO FILE AMENDED COMPLAINT, DENYING AS MOOT DEFENDANTS' MOTIONS TO DISMISS (DKT. NOS. 37, 52), DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL AND FOR RELIEF (DKT. NO. 44), DENYING AS MOOT PLAINTIFF'S MOTIONS FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT (DKT. NOS. 55, 58, 60, 66) AND DENYING AS MOOT PLAINTIFF'S MOTIONS FOR EXTENSION TO RESPOND (DKT. NOS. 60, 65)**

On December 21, 2020 the plaintiff, who is representing himself, filed a

complaint alleging that while he was a United States Postal Service employee,

numerous USPS employees and union stewards had discriminated against

him, harassed him and violated the Rehabilitation Act of 1973. Dkt. No. 1 at 3.

Although the plaintiff has paid the filing fee, the court will exercise its

1

discretion and screen the complaint under 28 U.S.C. §1915(e)(2). <u>See</u> <u>Slaughter v. First Am. Bank</u>, Case No. 24-cv-75-pp, 2024 WL 5238632 at *1 (E.D. Wis. Dec. 27, 2024).

The court will dismiss the plaintiff's complaint for failure to exhaust administrative remedies and will give the plaintiff an opportunity to file an amended complaint. The court also will deny as moot the parties' pending motions.

## I.      Procedural Background

The plaintiff's December 2020 complaint was the third he had filed in this district—on April 18, 2019, he filed <u>Kendrick v. Prahl, *et al*</u>, Case No. 19-cv-559-LA, alleging that various defendants affiliated with the USPS had violated his medical restrictions; less than a month later he filed <u>Kendrick v. Brennan, *et al*</u>, Case No. 19-cv-659-LA, alleging that various defendants affiliated with the USPS had retaliated against him for filing a grievance. The clerk's office assigned both cases to Judge Lynn Adelman. In both, Judge Adelman adopted Magistrate Judge Nancy Joseph's recommendations that he dismiss the cases on exhaustion grounds because the plaintiff's grievance proceedings had not concluded. <u>Prahl</u>, Case No. 19-cv-559, Dkt. Nos. 18, 20; <u>Brennan</u>, Case No. 19-cv-659, Dkt. Nos. 8, 9.

The original complaint in this case named the following twenty-one defendants:

Megan J. Brennan, Post Master General[1]
Robert G. Prahle[2]
Charles Spahn
Albert Guzman, Jr.[3]
Kim Ashmus[4]
Pamela Canada[5]
Darlene Abrams[6]
Katherine Vickers
Allen[7] G. Barney
Steve J. Bacik
Dianne M. Grabowski
Lillian M. Nieves
Meta K. Cicero
Daniel Kay (MDO's[8]/Supervisrs)
Gina Juniel

---

[1] It is not clear whether the plaintiff meant "Post Master General" to be defendant Brennan's title—Megan J. Brennan was the U.S. Postmaster General from February 1, 2015 to June 15, 2020, https://en.wikipedia.org/wiki/Megan_Brennan–or whether he meant to list defendant Brennan as one defendant and the Postmaster General at the time he filed the complaint (Louis DeJoy, who was Postmaster General from June 16, 2020 to March 24, 2025, https://en.wikipedia.org/wiki/Louis_DeJoy) as another. It makes little difference; Fed. R. Civ. P. 25(d) states that in the case of a public officer (like the Postmaster General), when that official ceases to hold office during the pendency of the lawsuit, "[t]he officer's successor is automatically substituted as a party." The defendants have substituted current Postmaster General David Steiner as the official defendant. The court will correct the docket accordingly.

[2] The plaintiff sometimes spells this defendant's surname "Prahl."

[3] The plaintiff listed this defendant twice in the caption of the complaint.

[4] The plaintiff listed this defendant twice in the caption of the complaint.

[5] The plaintiff listed this defendant twice in the caption of the complaint.

[6] The plaintiff listed this defendant twice in the caption of the complaint.

[7] The defendants spell this defendant's first name "Alan."

[8] It appears that in the USPS, an "MDO" is a manager of distribution operations.

3

(Mail Handler 1204B) Trent Canady[9]
Kenneth D. Liggans
Marvin Rivera
Pamela Walker
Larry Brown Jr.
John Micheli[10] (APWU[11] Stewards)

Dkt No. 1 at 1-2.

Before this court could screen the original complaint in this 2020 case, the plaintiff filed an amended complaint, asserting housing discrimination claims against an entirely new set of defendants, *without* reasserting the USPS employment claims from the original complaint. Dkt. No. 7. In November 2023, the court screened that amended complaint and allowed the plaintiff to proceed on the alleged housing discrimination claims against the four defendants named in that document. Dkt. No. 9. at 8-10.

Two weeks later, the court received from the plaintiff a letter asking the court to "separate" the employment discrimination claims in the original complaint from the housing discrimination claims in the amended complaint. Dkt. No. 11. The court construed the plaintiff's letter as a motion to sever under Federal Rule of Civil Procedure 21. Dkt. No. 18 at 5. The court granted that motion and opened a new case, transferring the plaintiff's motion to proceed without prepaying the filing fee to the new, housing discrimination case. Id. The court explained that the original 2020 case—"Case No. 20-cv-

---

[9] It is not clear whether the plaintiff meant the description of "mail handler" to apply to defendant Juniel or defendant Canady.

[10] The defendants spell this defendant's surname "Miceli."

[11] The APWU is the American Postal Workers Union. https://apwu.org/

4

1884—[would] include only the plaintiff's employment discrimination claims against the postal service. The court [would] strike from this case the filings related to the housing discrimination claims." Id. It recounted that in this case—Case No. 20-cv-1884—the plaintiff would need to either pay the filing fee or file a request to proceed without prepaying it. Id. at 5. The court also instructed the plaintiff that "[o]nce the court has received either the filing fee or the request to proceed in district court without prepaying the filing fee, the court will either order the plaintiff to serve the complaint (if he pays the filing fee) or screen the complaint as required by 28 U.S.C. §1915(e)(2) (if he files the non-prisoner request to proceed in district court without prepaying the filing fee)." Id. at 6–7. On April 15, 2024, after requesting and receiving an extension, the plaintiff paid the $402 filing fee.

A year passed with no further filings, because the court had missed the fact that the plaintiff had paid the filing fee. That meant that he was responsible for serving the defendants, but the court had neglected to advise the plaintiff that he needed to serve them. On April 17, 2025, the court issued an order apologizing for its delay in ordering the plaintiff to effect service on the defendants. Dkt. No. 23. On July 11, 2025, the court received a letter from the plaintiff, dkt. no. 28, to which he attached "proof of service" forms for the named defendants, dkt. no. 28-1. The "proof of service" forms showed that the plaintiff had served most of the defendants, but that summonses had been returned unexecuted for defendants Trenton Canady, Larry Brown Jr., Kenneth Liggan, Marvin Rivera, Pamela Walker, Gina Juniel, Allen Barney, Steven J.

5

Bacik and Katherine Vickers. Dkt. No. 28-1. The plaintiff's letter asked the court to enter default judgment against those defendants, whom he alleged had "avoided being served." Dkt. No. 28.

Eleven days after the court received the plaintiff's "proof of service," attorney Luke Sinclair entered a notice of appearance on behalf of the USPS employee-defendants (the "Agency Defendants"): Darlene Abrams, Kim Ashmus, Steve J. Bacik, Alan Barney, Megan J. Brennan, Pamela Canada, Meta K. Cicero, Dianne M. Grabowski, Albert Guzman Jr., Gina Juniel, Daniel Kay, Lillian M. Nieves, Robert G. Prahle, Charles Spahn and Katherine Vickers. Dkt. No. 29. Two days later (on July 24, 2025), attorneys Mark Sweet and Robert Lindsey filed a notice of appearance on behalf of "Defendants John Miceli and American Postal Workers Union, Milwaukee Area Local 3, AFL-CIO"[12] ("Union Defendants"). Dkt Nos. 33–34. No attorney has filed an appearance on behalf of defendants Trent Canady, Larry Brown, Jr., Kenneth Liggans, Marvin Rivera or Pamela Walker (nor does it appear that the plaintiff properly served those defendants with the original complaint).[13]

---

[12] The plaintiff did not name the American Postal Workers Union as a defendant, but he did describe at least one defendant—"John Micheli"—as an APWU steward, and he used the plural "stewards," implying that more than one defendant might have been an APWU steward. The defendants explain that Liggans, Rivera, Walker, Brown and Miceli all were union stewards.

[13] The clerk's office erroneously listed Attorney Sinclar as representing all defendants but John Miceli. Several of Attorney Sinclair's filings explicitly state that he represents only the "Agency Defendants." Canady, Brown, Liggans, Rivera and Walker are not among the "Agency Defendants." Dkt. Nos. 45, 53. The clerk's office has corrected the docket, reflecting that these defendants are not represented.

After the court had granted them extensions of time to file their answer, dkt. nos. 40, 47, and stayed proceedings while the government was shut down, dkt. no. 49, the Agency Defendants filed a motion to dismiss. Dkt. No. 52. The Union Defendants also have filed a motion to dismiss. Dkt. No. 37. And, since July 2025, the plaintiff has filed:

(a) a motion to compel and motion for relief, dkt. no. 44;
(b) a motion for clerk's entry of default and motion for default judgment, dkt. no. 55;
(c) a motion for entry of default, dkt. no. 58;
(d) a motion for default judgment and a motion for extension of time, dkt. no. 60;
(e) a motion for extension of time to respond to Agency Defendants' motion, dkt. no. 65, and
(f) a motion for clerk's entry of default and for default judgment, dkt. no. 66.

## II.    Facts Alleged in the Complaint

The plaintiff used this district's complaint form when filing his complaint. Dkt. No. 1. The complaint contains four pages of handwritten allegations. Id. The plaintiff explains that he was employed as a USPS clerk from 2014 to 2019. Id. at 3. He alleges that on April 26, 2019, he resigned from his job "due to the continued violation of [his] medical restriction, Rehabilitation Act of 1973, harassment, retaliation, discrimination, hostile environment." Id. (as in original).[14] He writes that he wants the USPS to give him his job back, pay him lost wages and pay him damages for his suffering. Id. He alleges that the violations occurred from 2017 to 2019. Id. at 6.

---

[14] All quotes are worded as they are in the original unless otherwise noted.

The plaintiff specifically alleges that "Mr. Prahl failed to stop the violation of [him] by the defendants[.]" Id. at 4. When listing the defendants, the plaintiff described Prahle as "Robert G. Prahle (plant manager)." Id. at 3. He claims that "they all participated in violation of [his] medical rights in violation of the Rehabilitation Act of 1973 out of retaliation for grievances, EEO's filed against Darlene Abrams in 2017 and Charles Spahn in 2018." Id. at 4. He contends that from March 10–13, 2018, "Charles Spahn instructed Pamela Canada, Kim Ashmus, Katherine Vickers to illegally restrict [him] from the building, because of [his] on the job injury and management was trying to force [him] off medical restriction set forth by [his] doctors[.]" Id. The plaintiff wrote "SDO"[15] after Spahn's name the first time it appears in the allegations. Id. at 3. He claims that "APWU Stewards Trent Canady, Kenneth Liggans, and Marvin Rivera went along with this violation[.]" Id. at 4. It is not clear which defendant the plaintiff accuses of doing this, but he alleges that someone subjected him to "denial of work and transfer from [his] shift when there was work." Id.

The plaintiff alleges that "[f]rom June 28, 2018, after [he] returned back to work (Management + APWU Stewards illegally used that OWCP[16] had to be approved to work at USPS/their insurance company)[.]" Id. The plaintiff asserts that "the violation continued with Alan G. Barney, Meta K. Cicero both tried to

---

[15] It appears that in the USPS, "SDO" stands for "supervisor of operations." https://about.usps.com/careers/featured-jobs.htm?video=sdo.

[16] It appears that "OWCP" stands for the U.S. Department of Labor's Office of Workers' Compensation Programs. https://www.dol.gov/agencies/owcp.

force [him] to work in area's that violated [his] medical restrictions[.]" Id. at 4–5. The plaintiff alleges that "Lillian M. Nieves twice in September 2018, tried to get [him] to sign a document that [he] got injured off the job." Id. at 5. The plaintiff alleges that "December 3, 2018, Charles Spahn instructed Gina Juniel (Mailhandler/204B) to write [him] up (Mailhandler can't Supervise Clerk's violate labor contract Oct. 3, 2018–Dec. 3, 2018) out of retaliation for grievances and EEO's filed against Mr. Spahn (had an upcoming EEO hearing Dec. 18, 2018)." Id. He alleges that "APWU Stewards Pamela Walker, Larry Brown Jr. and John Miceli went along with these violation." Id. The plaintiff says that "Daniel Kay signed bogus write from Ms. Juniel; like he wrote [the plaintiff] up and Mr. Kay wasn't working Primary (030/040) area from Oct.– December 2018." Id. The plaintiff wrote "MDO" after Kay's name the first time it appears in the allegations. Id. at 4. He continues, "March or April 2019 Darlene Abrams had Charles Spahn, Albert Guzman Jr., Pamela Canada and Steve J. Bacik swith [his] pay location to Ms. Abrams." Id. at 5.

The plaintiff explains that he "resigned April 26, 2019 due to the continue violation of [his] medical restriction, harassment, discrimination, retaliation, hostile environment." Id. He alleges that "May 2-10, 2019 Dianne M. Grabowski tried to get [him] to sign a document [saying that he was] Awol from USPS." Id.

Under the "Jurisdiction" section of the complaint, the plaintiff marked that he "is suing for a violation of federal law under 28 U.S.C. §1331." Id. at 6. In the "Relief Wanted" section, the plaintiff writes that he wants "[m]onetary

9

damages for violation of [his] medical restriction from Sept. 6, 2017–April 26, 2019; be made a career employee per contract of 2014, back pay from 2017–2019, overtime, annual days, out of schedule pay, holiday pay from 2018–2019, retirement money loss/investment; 1st shift job in 030/040 primary, Monday-Thursday 10 hr shift." Id. The plaintiff lists the monetary damages he wants, which total $40,000,000 ($5,000,000 each for punitive, compensatory, mental anguish, exemplary, anxiety, nominal, non-economic and declaratory). Id.

## III.    Explanation of Analysis

"[D]istrict courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status." Rowe v. Shake, 196 F.3d 778, 783 (7th Cir. 1999); Rezny v. Wis. Dep't of Fin. Insts., Case No. 22-C-1285, 2022 WL 17551151 at *1 (E.D. Wis. Dec. 9, 2022) (stating that courts are free to screen a complaint for a self-represented plaintiff who has paid the full filing fee under 28 U.S.C. §1915(e)(2)). Section 1915(e)(2) of Title 28 states that "the court shall dismiss the case at any time if the court determines that" the claim alleged in the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief."

Although the plaintiff filed his complaint on December 21, 2020, due to the press of other business the court did not immediately "screen" that complaint. Seven months later, the plaintiff filed his amended complaint, and the series of events the court has described above—separation of the case into

two cases, the plaintiff's service (or attempted service) of the complaint—ensued. The court *still* did not screen the complaint, and it should have. The court's failure to screen the complaint has created a variety of problems. Although it is very delinquent in doing so, the court now is doing what it should have done in the beginning—screening the plaintiff's original complaint.

The court has mentioned that defendant Miceli and the APWU have filed a motion to dismiss. Dkt. No. 37. They argue that the court should dismiss them as defendants under Federal Rule of Civil Procedure 12(b)(4) (dismissal for insufficient service of process), asserting that the plaintiff's service on Miceli was deficient in several ways and that the union itself was not named as a defendant. Dkt. No. 38 at 1. They also argue that the court should dismiss them as defendants because the complaint fails to state a claim against them for which this federal court may grant relief; they speculate about the statues under which the plaintiff may be seeking relief and explain why they believe those statutes afford the plaintiff no relief. Id. at 2-3.

The Agency Defendants also have filed a motion to dismiss the complaint; they cite Fed. R. Civ. P. 12(b)(6) and assert that the complaint fails to state a claim for which this court may grant relief. Dkt. No. 52. Specifically, the Agency Defendants maintain that the plaintiff has not alleged the elements of a Rehabilitation Act claim, and that he has failed to exhaust his administrative remedies. Dkt. No. 53 at 10.

Most of the defendants the plaintiff has named are not subject to suit under the Rehabilitation Act and it does not appear that he has exhausted his

11

administrative remedies. The court will dismiss the complaint for those reasons. It will not analyze the defendants' arguments because it is going to give the plaintiff an opportunity to amend the complaint. The court will deny as moot the plaintiff's other motions. Any defendant named by the plaintiff in an amended complaint retains the right to move for dismissal if warranted.

## IV. Screening

### A. Legal Standard

To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2). The court must accept as true the factual allegations in the complaint, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff does not need to plead every fact supporting his claims; he needs only to give the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the speculative level." Id. "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." United States *ex rel.* v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003). Because the plaintiff is representing himself, the court must liberally construe the allegations of his complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

12

Although the court must take his allegations as true and liberally construe them, the court may consider only what the plaintiff alleges in his complaint. Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 505 (7th Cir. 2013) (citing Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002)).

B.     Analysis

The plaintiff alleges that he resigned his job at the USPS because various people there were violating his medical restrictions; he may also be attempting to allege harassment, retaliation, discrimination and a hostile work environment at the hands of supervisors and other employees of the USPS. Dkt. No. 1 at 3. The plaintiff appears to believe that various individuals at the USPS discriminated against him based on his "medical restrictions" or perhaps based on an injury, and he alleges that he was subject to retaliation because of two EEO[17] claims he made against Darlene Abrams and Charles Spahn. Id. at 3–5. He claims that these actions violated the Rehabilitation Act of 1973. Id. at 3. The plaintiff did not allege any other kind of discrimination, such as race, gender or age discrimination, so the court proceeds on the assumption that the plaintiff meant to allege only that he was discriminated against because of his "medical restrictions," and that that discrimination violated only the

---

[17] EEO is to federal employees what EEOC is to private ones. See Lapka v. Chertoff, 517 F.3d 974, 981 (7th Cir. 2008); see also Ferguson v. Runyon, 116 F.3d 1482, at *2 (7th Cir. 1997) (Table) ("for purposes of discrimination claims filed by federal employees, a complaint filed with an agency's EEO office is the equivalent of an EEOC charge.").

Rehabilitation Act.[18] And although the plaintiff does not use the word "disability" to describe the discrimination he alleges he faced (he calls the basis of the discrimination "medical restrictions"), the court will use the word "disability" because the plaintiff cited the Rehabilitation Act, which prohibits discrimination based on "disability."

The Rehabilitation Act of 1973, 29 U.S.C. §§701 *et seq.,* prohibits recipients of federal funds from discriminating against an otherwise qualified individual based solely on that individual's disability. 29 U.S.C. §794. The statute borrows the claims, elements and standards from the other federal discrimination laws, including the Americans with Disabilities Act and Title VII. See Royan v. Chi. State U., 145 F.4th 681, 689 (7th Cir. 2025) (ADA); McHale v. McDonough, 41 F.4th 866, 781 (7th Cir. 2022) (Title VII). This means that on the same facts, a plaintiff sometimes can make out both an ADA or Title VII claim *and* a Rehabilitation Act claim. See Garg v. Potter, 521 F.3d 731, 736 (7th Cir. 2008) ("We examine our precedent under the ADA to determine whether [plaintiff] has made out a *prima facie* case under the Rehabilitation Act."); see also Burks v. Wis. Dept. of Transp., 464 F.3d 744, 758 n.16 (7th Cir. 2006) (analysis of retaliation claims under the Rehabilitation Act and Title VII is identical).

There is an additional element in Rehabilitation Act claims: for a plaintiff to state a claim against an employer under the Rehabilitation Act, that

---

[18] Miceli and the APWU speculate that the plaintiff may be trying to raise claims under the Postal Reorganization Act. Dkt. No. 38 at 2. The court can find no language in the complaint supporting that speculation.

14

employer must receive federal funds. 29 U.S.C. §794(a); see also Whitaker v. Wis. Dept. of Health Services, 849 F.3d 681, 684 (7th Cir. 2017). Although the plaintiff has not alleged that the USPS receives federal funding, the USPS is a federal agency and the Seventh Circuit has allowed Rehabilitation Act cases to proceed against the USPS, usually without citing this requirement. See Simpson v. DeJoy, Appeal No. 21-1547, 2021 WL 6124885 (7th Cir. Dec. 28, 2021); see also Anderson v. Donahoe, 699 F.3d 989 (7th Cir. 2012); Sanchez v. Henderson, 188 F.3d 740, 744 (7th Cir. 1999) (proceeding in analyzing a Rehabilitation Act claim against the USPS after noting the act "prohibits recipients of federal funds from discriminating against an otherwise qualified individual based solely on that individual's real or perceived disability.").

But the court has not analyzed whether the plaintiff has alleged all the other elements of a Rehabilitation Act claim, because his complaint has threshold deficiencies—it names defendants not subject to suit under that statute and it does not clarify whether the plaintiff has exhausted his administrative remedies.

### 1. *Proper Defendants*

The only proper defendant under the Rehabilitation Act is the governmental agency or the director of the agency. Marx v. Richland County, Wis., Case No. 15-CV-764, 2017 WL 11534778 at *2 (W.D. Wis. Apr. 4, 2017) (citing Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 670 n.2 (7th Cir. 2012); 42 U.S.C. §12131(1)(b)). Plaintiffs cannot sue individuals under the Rehabilitation Act. Cesca v. W. Ill. Univ. Bd. of Trs., 716 F. Supp. 3d 696, 705 (C.D. Ill. 2024)

15

(citing <u>Brewer v. Wis. Bd. of Bar Examiners</u>, 270 F. App'x 418, 421 (7th Cir. 2008)); <u>Leffler v. Milwaukee Pub. Schools</u>, Case No. 25-CV-822, 2025 WL 3485602 at *4 (E.D. Wis. Dec. 4, 2025) (same); <u>see also</u> <u>Jaros</u>, 684 F.3d at 670 (employes of the agency were "not amenable to suit under the Rehabilitation Act"). This is because there is no personal liability for individuals under the statute. <u>Stanek v. St. Charles Community Unit Sch. Dist. No. 303</u>, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court was also correct to dismiss them in their individual capacity for the discrimination and retaliation claims arising directly under the Rehabilitation Act and the ADA") (collecting authorities).

Out of the twenty-one defendants the plaintiff has named, only the Postmaster General (current Postmaster General David Steiner) is a proper defendant, because he is the director of the USPS. <u>See</u> <u>Marx</u>, 2017 WL 11534778 at *2. The rest are individuals, which means the court must dismiss them as defendants. If he chooses to file an amended complaint raising a Rehabilitation Act claim, the plaintiff may proceed on that claim only against Postmaster General David Steiner.

### 2. *Exhaustion*

"To bring a lawsuit under the Rehabilitation Act, plaintiffs must exhaust administrative remedies and cannot bring claims in the lawsuit not in the original EEO[ ] charge." <u>McHale v. McDonough</u>, 41 F.4th 866, 869 (7th Cir. 2022) (Judges Sykes, Kirsch and Jackson-Akiwumi, authored by Judge Kirsch) (citing <u>Chaidez v. Ford Motor Co.</u>, 937 F.3d 998, 1004 (7th Cir. 2019); <u>McGuinness v. U.S. Postal Serv.</u>, 744 F.2d 1318, 1319–20 (7th Cir. 1984)). In a

16

parenthetical in <u>McHale</u>, the Seventh Circuit cited <u>McGuinness</u> for the following proposition: "the Rehabilitation Act has the same exhaustion requirements as Title VII[.]" <u>Id.</u>

In 2022, three days after issuing the decision in <u>McHale</u>, the Seventh Circuit issued a decision which stated the following in a footnote:

> The record does not indicate whether Swain exhausted administrative remedies—likely a requirement for Rehabilitation Act claims, though our case law has not been clear on the point. *Compare Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (observing that Rehabilitation Act plaintiffs "can seek relief pursuant to the procedures and requirements outlined in Title VII of the Civil Rights Act, which include exhausting administrative remedies prior to bringing suit."), *and Johnson v. Runyon*, 47 F.3d 911, 916 n.5 (7th Cir. 1995), *with Williams v. Milwaukee Health Servs., Inc.*, 732 F.3d 770, 770–71 (7th Cir. 2013) ("A seeker of relief under the Rehabilitation Act against a recipient of federal money is not required to exhaust the administrative remedies that the Act provides.").

<u>Swain v. Wormuth</u>, 41 F.4th 892, 896 n.2 (7th Cir. 2022) (Judges Hamilton, Brennan and Kirsch, authored by Judge Brennan). Nonetheless, the <u>McHale</u> court expressly had stated three days earlier that Title VII's exhaustion requirement applies to the Rehabilitation Act, and Judge Kirsch was on both panels. The court concludes that the Seventh Circuit requires Title VII-type exhaustion before a plaintiff may bring his Rehabilitation Act claims in federal court.

"'Exhaust' in this context means that the claimant must comply with the relevant preconditions [in the regulation] to bringing a lawsuit, including filing a timely complaint with the agency after contacting an EEO counselor." <u>Reynolds v. Tangherlini</u>, 737 F.3d 1093, 1099 (7th Cir. 2013) (citations

17

omitted). "[T]he scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges." Id. at 1099–1100 (citations omitted). Exhaustion "is not a jurisdictional issue, but a condition precedent to bringing a claim under the Act and plaintiffs who have not exhausted their administrative remedies have prematurely brought their claims into the courts." Teal, 559 F.3d at 691 (citations omitted). EEOC exhaustion requirements also apply to EEO claims. See Lapka v. Chertoff, 517 F.3d 974, 981 (7th Cir. 2008); see also Ferguson, 116 F.3d 1482, at *2 ("for purposes of discrimination claims filed by federal employees, a complaint filed with an agency's EEO office is the equivalent of an EEOC charge.").

The plaintiff is aware of the exhaustion requirement, because Judge Adelman dismissed his previous two cases on the ground that he failed to exhaust those remedies. Prahl, Case No. 19-cv-559, Dkt. Nos. 18, 20; Brennan, Case No. 19-cv-659, Dkt. Nos. 8, 9. Adopting recommendations from Judge Joesph, Judge Adleman dismissed the plaintiffs' cases because his EEO proceedings had not yet concluded. Id. If the plaintiff's EEO proceedings had not concluded at the time he filed this lawsuit, the lawsuit is premature and the court must dismiss it.

Perhaps the plaintiff's EEO proceedings now have concluded, but he did not say that in his complaint. The complaint states only that the plaintiff filed two EEO claims, one against Darlene Abrams in 2017 and one against Charles

18

Spahn in 2018. Dkt. No. 1 at 4. That is the extent of the complaint's allegations. The plaintiff does not explain the status of the claims or describe the conduct that created the claims or identify the results of the claims. Viewing only the allegations in the complaint, the court cannot determine if the plaintiff exhausted his administrative remedies—it cannot tell if the claims he raised before the EEO are the same claims he raises in his complaint in this case, whether the EEO has made a decision or if so, whether he timely filed his federal complaint after that ruling. Because the plaintiff has not demonstrated that he has exhausted his administrative remedies, the court must dismiss the complaint as premature.

But it is possible that if the plaintiff were to add this information, he might be able to show that he has exhausted his administrative remedies. It appears that the plaintiff *has* documents relating to his EEO claims, because he attached some of them to his "Motion to Compel and Motion for Relief." Dkt. Nos. 44-2 at 33 (USPS Information for Pre-Complaint Counseling document), 38 (EEO ADR Specialist's Inquiry Report), 41 (May 6, 2019 letter from EEO investigator), 47 (EEO Investigative Affidavit for Compensatory Damages), 51 (EEO Investigative Affidavit).[19] But the plaintiff did not refer to these documents in his *complaint*, nor did he attach them to his complaint.

---

[19] The Agency Defendants also spent a good portion of their motion to dismiss arguing that the plaintiff's disability discrimination claims go beyond what he alleged in his EEO claims, attaching the claims to their brief. Dkt. Nos. 53 at 3–29; 53-3, 53-4, 53-5.

In screening a complaint, the court may consider only the complaint and the exhibits attached to the complaint that comply with Fed. R. Civ. P. 10. See Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 505 (7th Cir. 2013). The actual EEO claims documents do not appear in the plaintiff's complaint or as exhibits, so the court cannot use them to determine whether the plaintiff has exhausted his administrative remedies. (And the documents he attached to his motion to compel do not clarify whether the plaintiff has *completed* the EEO process, which he must do before coming to federal court.)

The court will dismiss the complaint *without* prejudice, which means that it will give the plaintiff permission to amend his complaint. But if the plaintiff decides to file an amended complaint, at the very least he must include in the complaint information about when he filed his EEO complaint, what he alleged in that complaint, what the outcome of the EEO proceeding was and when the EEO made its decision. He also may, if he chooses to do so, attach to the amended complaint documents showing that the EEO proceedings are complete and that he exhausted his administrative remedies before filing his federal complaint on December 21, 2020.

## V.    Amended Complaint

The plaintiff is not required to file an amended complaint. If he does not do so by the date the court specifies at the end of the order, the court will dismiss this case on the next business day without further action from the plaintiff.

But if the plaintiff chooses to amend his complaint, there are several things he must keep in mind. First, he must use the court's amended complaint form; the court is including a blank form with this order. The plaintiff must list the case number for this case—20-cv-1884—on the first page. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe the "who, what, when, where and how" of his claims—who harmed him? How did that person harm him? When did they do it? How did they do it? Why does he believe that they harmed him based on a disability? And what is the disability? If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The plaintiff must provide the details the court has identified that are missing from the original complaint.

Second, if the plaintiff chooses to proceed only on a Rehabilitation Act claim, the only proper defendant is the Postmaster General, currently David Steiner. The individual defendants the court has dismissed are not proper defendants for a Rehabilitation Act claim.

Third, if the plaintiff is, in fact, alleging that someone discriminated against him based on a disability, he must describe that disability *in the amended complaint*. It is not enough for him to attach to *other* filings documents that mention his injury. He must explain *in the amended complaint* what his disability is and why he believes that he was discriminated against

because of that disability. If the plaintiff is alleging that he was discriminated against for other reasons, he must clearly explain what those reasons are.

Fourth, as the court has explained, the plaintiff must include in the amended complaint information about whether his EEO proceedings have concluded and if they have, what the EEO decided and when.

The amended complaint will take the place of the original complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

## VI.    Pending Motions

Because the court is dismissing the original complaint, the pending motions are moot. The motions to dismiss filed by the Union and Agency Defendants (Dkt. Nos. 37, 52) are moot because the court is dismissing all but one defendant and dismissing the claims against that defendant for the plaintiff's failure to exhaust administrative remedies. See Fuller v. Patel, Case No. 23-cv-1307-pp, 2024 WL 84141 at *7 (E.D. Wis. Jan. 8, 2024) (denying pending motion to dismiss as moot after dismissing complaint at screening). Mooting the Agency Defendants' motion to dismiss also moots the plaintiff's motions for an extension of time to respond to that motion and moots the plaintiff's motions for default judgment, which are premised on the theory that the Agency Defendants failed to timely respond to his complaint. Dkt. Nos. 55, 58, 60, 65, 66.

That leaves the plaintiff's motion to compel and motion for relief. Dkt. No. 44. Although the plaintiff called this document a "motion," the content reflects that it is a brief in opposition to the Union Defendants' motion to dismiss. It was filed one day before the plaintiff's deadline to respond to the motion and addresses several of the Union Defendants' arguments. Id. Because the court is dismissing as moot the Union Defendants' motion to dismiss, it also will dismiss the plaintiff's motion/opposition brief as moot.

## VII. Miscellaneous

The court understands that the plaintiff is not a lawyer and that he likely has no legal training. But in the span of four months (between September 2025 and January 2026), the plaintiff filed *six* motions. Several of them were motions for default, even though none of the defendants had defaulted (either because they had answered or otherwise responded to the complaint or because they had not been properly served under Fed. R. Civ. P. 4). Flooding the court with unnecessary and unfounded motions will slow down the litigation, not speed it up. The court will explain how the case next will proceed, in the hope that it will help the plaintiff avoid filing unnecessary motions.

Below, the court has set a deadline for the plaintiff to file an amended complaint. If he files an amended complaint by that deadline, the court will screen it. If the court decides that the amended complaint states claims for which a federal court may grant relief, it will advise the plaintiff and instruct him to serve any appropriate defendant(s) (and to effectuate that service as required by Federal Rule of Civil Procedure 4). The defendant(s) then will have

23

the opportunity to *either* answer the amended complaint *or* file a "responsive motion," such as a motion to dismiss. If a defendant timely files an *answer,* the court will issue a scheduling order advising the parties to meet and confer about pre-trial deadlines such as the deadline for completing discovery and the deadline for filing dispositive motions. If a defendant files a *motion to dismiss,* the court will require that if the plaintiff wants to file a brief in opposition to the motion to dismiss, he must do so within twenty-one (21) days of the date he is served with the motion. The defendant who filed the motion then will get an opportunity to file a reply brief in support of the motion. After the motion has been fully briefed (which happens after the moving party files a reply), the court will review the briefs and decide whether to dismiss the case or allow it to proceed. If the court allows the case to proceed, it will issue a scheduling order advising the parties to meet and confer about pre-trial deadlines.

The court encourages the plaintiff to be patient. If he files an amended complaint, it might take the court time to review it. But the court *will* review it. In the meantime, the plaintiff should keep the court up to date on his address; if he moves, it is his responsibility to let the court know his new address, so that the court can make sure he receives important orders and documents.

## VIII. Conclusion

The court **ORDERS** the clerk's office to substitute U.S. Postmaster David Steiner for defendant Megan J. Brennan.

The court **ORDERS** that defendants Post Master General, Prahle, Spahn, Guzman, Ashmus, Canada, Abrams, Vickers, Barney, Bacik, Grabowski,

24

Nieves, Cicero, Kay, Juniel, Canady, Liggans, Rivera, Walker, Brown and Miceli are **DISMISSED**.

The court **FINDS** that the plaintiff has failed to show that he exhausted his administrative remedies as required. The court **ORDERS** that the complaint is **DISMISSED WITHOUT PREJUDICE**. Dkt. No. 1.

The court **DENIES AS MOOT** the Union Defendants' Motion to Dismiss. Dkt. No. 37.

The court **DENIES AS MOOT** the plaintiff's Motion to Compel and for Relief. Dkt. No. 44.

The court **DENIES AS MOOT** the Agency Defendants' Motion to Dismiss. Dkt. No. 52.

The court **DENIES AS MOOT** the plaintiff's Motion for Clerk's Entry of Default and Motion for Default Judgment. Dkt. No. 55.

The court **DENIES AS MOOT** the plaintiff's Motion for Entry of Default. Dkt. No. 58.

The court **DENIES AS MOOT** the plaintiff's Motion for Entry of Default and Motion for Extension to Respond. Dkt. No. 60.

The court **DENIES AS MOOT** the plaintiff's Motion for Extension to Respond. Dkt. No. 65.

The court **DENIES AS MOOT** the plaintiff's Motion for Clerk's Entry of Default and Default Judgment. Dkt. No. 66.

The court **ORDERS** that if the plaintiff wishes to proceed with this case, then by the end of the day on **July 10, 2026**, he must file an amended

complaint that complies with this order. If the plaintiff does not file an amended complaint that complies with this order by the end of the day on **July 10, 2026**, the court will dismiss the case for the plaintiff's failure to exhaust administrative remedies.

The court **ORDERS** that any defendant named in any amended complaint the plaintiff may file is not required to respond to the plaintiff's amended complaint until the court has screened the amended complaint and ordered the defendant(s) to answer or otherwise respond.

Dated in Milwaukee, Wisconsin this 4th day of June, 2026.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge